UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOYCE J.,

                Plaintiff,                       **DECISION AND ORDER**

     v.

                                       1:20-CV-1112 EAW
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Joyce J. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 13; Dkt. 15).  For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 15) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on January 23, 2017. (Dkt. 12 at 183-84).[1]  In her application, Plaintiff alleged disability beginning March 31, 2016. (*Id.*). Plaintiff's application was initially denied on March 17, 2017. (*Id.* at 92-103). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani on April 15, 2019. (*Id.* at 40-81). On May 6, 2019, the ALJ issued an unfavorable decision. (*Id.* at 19-39). Plaintiff requested Appeals Council review; her request was denied on June 15, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *Id*. § 404.1520(e).  The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  The ALJ determined that Plaintiff met the insured status requirement of the Act through December 31, 2021.  (Dkt. 12 at 21).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 31, 2016, the alleged onset date.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: obesity; cervical degenerative disc disease, status post fusion of C4-C5 and C5-C6; degenerative disc disease of the lumbar spine; bilateral carpal tunnel syndrome; history of a left leg fracture with internal fixation and later removal of retained hardware; and a history of left knee meniscal tear and patellar chondromalacia, status post arthroscopic repair. (*Id.*).  The ALJ also found that Plaintiff's diabetes, hypertension, history of ductal cancer, major depressive disorder, alcohol use disorder, dyslipidemia, GERD, migraine headaches, and venous insufficiency were non-severe impairments. (*Id.* at 22).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 24-25).

Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a), except that she could occasionally push and pull, climb ramps and stairs, crouch, bend, and squat, but could not climb ladders, ropes, or scaffolds, kneel, crawl, perform overhead work, work around hazards or work with vibratory tools. (*Id.* at 25).  The ALJ also determined that Plaintiff could frequently handle and finger. (*Id.*).  At step four, the ALJ found that Plaintiff was able to perform her past work as an inspector and sorter. (*Id.* at 33).  Accordingly, the ALJ found Plaintiff not disabled. (*Id.* at 34).

II.   __Remand for Further Proceedings is Necessary__

Plaintiff advances two arguments, essentially contending that the ALJ's RFC determination was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of independent medical examiner Dr. Robert Bauer and to develop the record regarding her functional abilities, which, as a result, caused him to formulate Plaintiff's RFC based on his lay opinion.  (Dkt. 14 at 14-27).  For the reasons that follow, the Court agrees.

Here, in making his RFC finding, the ALJ evaluated several medical assessments of Plaintiff's treating physicians and the opinion of consultative examiner Dr. Bauer, all of whom evaluated Plaintiff's functioning as part of her workers' compensation claim.[2]  (Dkt. 12 at 30-33).  Specifically, the ALJ analyzed the assessments of Plaintiff's orthopedic surgeon Dr. Lindsey Clark, whose team treated Plaintiff from August 2016 through October 2018 and found her to be 50% to 100% disabled at various points during treatment.  (*Id*. at 30-31, 331-53, 481-08, 630-36, 641-45, 658-90, 804-06).  The ALJ also evaluated medical assessments of Dr. David Bagnall and physician assistant ("PA") Karyanne Cox, who treated Plaintiff from approximately 2014, prior to the alleged onset date, through March 2017, and found her to have varied levels of temporary disability during treatment.  (*Id*. at 383-48).  Specifically, Dr. Bagnall found that Plaintiff was 33% to 50% impaired from May 2016 to March 2017.  (*Id*.).   Similarly, Dr. Joshua Jones and PA Frank

---

[2]     Plaintiff sustained two work-related injuries prior to the alleged onset date and was receiving workers' compensation benefits at the time she applied for disability.  (Dkt. 12 at 190-99).

Domnisch, treated Plaintiff for a year for her bilateral carpal tunnel syndrome, and assessed her with being 100% disabled from October 2017 through April 2018 and 75% impaired thereafter. (*Id*. at 449-52, 557-79). The ALJ afforded these assessments partial and little weight because they were expressed in vague terms based upon the workers' compensation rules and regulations, which, as he recognized, differed significantly from the Social Security regulations. (*Id*. at 31-32). The ALJ also afforded Dr. Jones' assessments little weight because his findings did not contain any functional limitations about Plaintiff's abilities and were not supported by the record. (*Id*. at 32). While affording little weight to the assessments of Dr. Clark and Dr. Bagnall, the ALJ noted their significance in providing the longitudinal history of Plaintiff's abilities that ranged from Plaintiff being completely disabled to eventually having some ability to work, and, to that extent, afforded portions of their assessments great or significant weight. (*Id*.). Additionally, the ALJ provided great weight to Dr. Clark's only functional assessment–Plaintiff's inability to lift–but noted that such limitation was temporary because it existed while Plaintiff was recovering from a neck surgery. (*Id*.).

Lastly, the ALJ considered the opinion of independent medical examiner Dr. Bauer, who, as part of Plaintiff's workers' compensation claim, opined that Plaintiff was moderately to markedly disabled and had specific restrictions in all her functional abilities.[3] (*Id*. at 306-08). The ALJ assigned little weight to the opinion because it was based on a

---

[3]     The ALJ considered several other opinions in his decision, including those related to Plaintiff's mental functioning, which were not addressed by Plaintiff in his papers and, as such, are not discussed by the Court. (*Id*. at 32-33).

single examination and was issued prior to Plaintiff undergoing two surgeries subsequent to Dr. Bauer's examination.  (*Id*. at 32).

As noted above, Plaintiff contends that the ALJ erred in his assessment of Dr. Bauer's opinion.  Plaintiff further argues that, having discounted Dr. Bauer's opinion, the ALJ was left without meaningful medical evidence from which to assess Plaintiff's RFC.  Turning first to the ALJ's assessment of Dr. Bauer's opinion, it is true that the medical opinion of a consultative examiner rendered after a single examination will not necessarily represent substantial evidence for purposes of the ALJ's formulation of an RFC.  *See Estrella*, 925 F.3d at 98 ("We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." (internal citation and quotation marks omitted)).  However, under the regulations applicable to Plaintiff's claim, the ALJ was still required to provide a reasoned explanation for the weight given to Dr. Bauer's opinion.  *See Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014).

In this case, the ALJ's reasoning for discounting Dr. Bauer's findings, particularly those related to Plaintiff undergoing two surgeries subsequent to his examination, presents a problem in light of the ALJ's evaluation of the rest of the record.  It should be noted that Plaintiff underwent two surgeries following her filing of the disability application–a fusion neck surgery performed on July 27, 2017, and a surgery to remove a metal hardware from her left leg performed on the July 12, 2018.  (Dkt. 31 at 655, 842-43, 867-68, 935-36).  The ALJ discounted Dr. Bauer's findings because they predated Plaintiff's surgeries, and as such, provided little value to the assessment of Plaintiff's disability on a long-term basis.  (*Id*. at 32).

The ALJ's evaluation of Dr. Bauer's assessment—as well as his evaluation of the opinions of Plaintiff's treating physicians—is thus predicated on the ALJ's assumption that Plaintiff's impairments improved following the two surgeries.  In fact, when evaluating Dr. Clark's opinion, the ALJ stated that Plaintiff made an improvement from being 100% disabled while healing from the neck surgery to "improving with some ability to perform work."  (*Id*.).  However, the record is unclear whether Plaintiff did, in fact, improve after having a neck surgery, and if so, to what extent.

While the record demonstrates some temporary improvement in Plaintiff's neck, shoulder, and hand pain following the July 2017 surgery, it also shows the deterioration of her conditions several months after the surgery when Plaintiff complained about the gradual return of the numbness and pain in her arms and hands, stiffness and pain in her neck that radiated to her mid-back, soreness between shoulder blades, and lower back pain. (*Id*. at 568, 570, 658, 664-65, 668, 673-75, 678, 682-84, 706-21, 733-54, 975).  Even though Plaintiff originally reported getting some relief from massage therapy, physical therapy no longer improved her symptoms.  Her treatment providers noted moderate pain and tenderness in the cervical and thoracolumbar area of Plaintiff's back, and continued to document her complaints of the right-side posterior neck pain that radiated to her mid-back. (*Id*. at 682-84, 686, 693-95, 697-99,701-03, 706-21, 722-24, 731, 733-53, 793, 802-06). Plaintiff's low back pain was also getting worse as it travelled down her legs, causing Plaintiff's legs to give out and eventually causing Plaintiff to fall.  (*Id*.).  Dr. Pratibha Bansal at Pain Rehab of WNY consistently noted Plaintiff's pain being on average 8/10 following the surgery; Plaintiff could not stand for 10 minutes or sit for 30 minutes, and

standing and walking increased her pain.  (*Id.* at 693-95, 697-99, 701-03, 706-21, 722-24, 733-24, 733-54).  In November 2017, Plaintiff was admitted into an emergency room for wide body pain.  (*Id.* at 849-50).  She was unable to move her right side, and had painful numbness that travelled down her entire right side from her back to her leg.  (*Id.*).  She continued to have neck and upper back pain with decreased neck and shoulder range of motion, as well as limitations with bending, lifting, reaching, and gripping objects.  (*Id.* at 973-75).  Even though Plaintiff admitted having an improvement in her neck and shoulder pain and her ability to stand for 15-20 minutes in January 2018, by March 2018 Plaintiff complained about having right side neck pain that radiated to her mid-back, and that sitting for more than 30 minutes exacerbated her symptoms and required her to walk or lay down for 30-40 minutes.  (*Id.* at 972, 678, 682-84).  In August 2018, Dr. Bansal continued to document tenderness over Plaintiff's L5-S1 facet joints, and moderate amount of myofascial pain in the thoracolumbar and paravertebral areas, as well as in gluteal, piriformis, iliotibial fascia.  (*Id.* at 695).

As for the impairment of Plaintiff's hands, her history of bilateral carpal tunnel syndrome, as well as numbness and pain associated with it, dated back to the work-related injury that occurred in February 2016.  (*Id.* at 449).  Dr. Jones noted that her bilateral carpal tunnel syndrome was likely due to the repetitive use of her hands and lifting, and noted that it was progressing from being mild in 2012 to moderate in 2017.  (*Id.* at 449, 451).  Having undergone corticosteroid injections and eventually a neck surgery in July 2017, Plaintiff initially demonstrated good strength and noted the improvement of the pain in her hands. However, several months after the surgery, Plaintiff reported the return of frequent

numbness and tingling in her hands, as well as difficulty gripping.  (*Id*. at 572, 578).  Dr. Jones noted that even though Plaintiff preferred to relieve the pain associated with her bilateral carpal tunnel syndrome through injections, cockup splints, occupational therapy, and home exercise program, she, nevertheless, required surgery to address the impairment because such conservative measures were no longer working.  (*Id*. at 562-64, 572-74, 576-77).  Therefore, the record is clear that even though Plaintiff experienced periods of improvement of her neck, back, shoulder, and hand pain following the July 2017 surgery, such improvement was temporary, and, as such, should not have been solely relied on by the ALJ to determine that Plaintiff was capable of working.  *See Stacey v. Comm'r of Soc. Admin*., 799 F. App'x 7, 10 (2d Cir. 2020) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." (internal citations omitted)).

It should be noted that the ALJ acknowledged the inconsistency of the evidence related to Plaintiff's symptoms and treatment following the neck surgery, as well as the lack of substantive treatment records following her leg surgery.  (Dkt. 12 at 28-29).  Yet, instead of resolving the inconsistencies, he drew the conclusions from the record that were least favorable to Plaintiff to determine that her impairments had improved following the two surgeries and that she was capable of working.  This was error.  Because the ALJ is tasked with ensuring fairness of the disability hearing, failure to clarify inconsistencies of a record has been well-recognized as the ALJ's violation of his duty to develop the record, which warrants remand, unless the record contains sufficient evidence from which the ALJ can assess the RFC.  *See Tankisi v. Comm'r of Soc. Sec*., 521 F. App'x 29, 34 (2d Cir.

2013) ("remand is not always required when an ALJ fails in his duty to request opinions, . . . where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity"); *but see Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (the ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability") (internal citations omitted).

Further, the Court agrees with Plaintiff that the record in this case was insufficient for the ALJ to determine that Plaintiff was capable of performing sedentary work with specific limitations. Even though the record of Plaintiff's various impairments and symptoms associated with them is extensive and dates back to at least 2014, the evidence that could have assisted the ALJ with formulating Plaintiff's RFC, particularly subsequent to Plaintiff's surgeries, was insufficient. The ALJ himself acknowledged that the record was devoid of any opinion that discussed Plaintiff's abilities in functional terms, except for the findings related to Plaintiff's ability to lift and carry–the only functional findings in the record that appeared in the assessments of Dr. Clark and Dr. Bagnall. (Dkt. 12 at 31-32).

Those findings were insufficient to formulate Plaintiff's RFC. Even though the ALJ afforded the relevant portion of Dr. Clark's assessment significant weight, he also recognized that Plaintiff's inability to lift more than a jug of milk was temporary in nature while Plaintiff was recovering from a neck surgery until October 2018, after which the limitation was no longer reported by Dr. Clark. (*Id*. at 31). Indeed, it is unclear whether Plaintiff's lifting was limited in any way past October 2018; however, it is difficult to assume that the limitation disappeared altogether considering that Dr. Clark's October 22,

2018 note indicated that Plaintiff was not able to perform work activities without limitations and was still 75% impaired.  (Dkt. 12 at 806).  What is more, Plaintiff visited her pain management specialist Dr. Bansal that same day, who documented Plaintiff having low back pain, moderate myofascial pain and tenderness over the L5-S1 facet joints, average pain of 8/10, and noted her inability to stand for more than 20 minutes and sit for more than 60 minutes.  (*Id.* at 794-96).  Considering that sedentary work involves sitting most of the time and some standing, at the very least this finding casts doubt on the ALJ's RFC determination that Plaintiff was capable of sedentary work without any limitations in her ability to sit and stand for prolong periods of time.  *See* 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, 1996 WL 374185. *3 (S.S.A. July 2, 1996) (sedentary work generally involves sitting for 6 hours and standing and walking for 2 hours of an 8-hour workday).  Even though a limitation in the ability to sit does not necessarily preclude a finding that the claimant can meet the sitting demands of sedentary work, under the circumstances, the ALJ was still required to provide a sufficient explanation as to why, despite the sitting limitation, Plaintiff could perform sedentary work.  *See Toomey v. Colvin*, 15-CV-730-FPG, 2016 WL 3766426, at *4 (W.D.N.Y. Aug. 3, 2016) (remanding where the ALJ failed to reconcile his finding that plaintiff could perform sedentary work with a medical opinion that she was "moderately limited in sitting for a long time").

As to Dr. Bagnall's assessment—portions of which the ALJ afforded significant weight—he last opined that Plaintiff was 50% impaired on March 17, 2017, four months

prior to Plaintiff's neck surgery, making the assessment not particularly useful in determining Plaintiff's functional abilities on a long-term basis.[4]   (*Id.* at 383-85). Therefore, not only is the ALJ's analysis of both physicians' assessments problematic in light of the evidence suggesting that Plaintiff's impairments did not improve following her surgeries, but it also demonstrates the ALJ's awareness of the incompleteness and inconsistencies of the record with respect to Plaintiff's functional abilities, and his failure to resolve them.  *See Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-4760 (PKC), 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022) ("While there is no affirmative duty to resolve all inconsistencies in the record, . . . inconsistencies or vague opinions can also create a duty to further develop the record.").

That is not to say that the ALJ was unable to formulate Plaintiff's RFC without relying on a particular medical opinion.  It has been well-recognized that an ALJ is free to make an RFC determination without relying on an assessment of any particular treating source and, in fact, is free to make an RFC determination without relying on *any* opinion of record.  However, the ALJ can do so only as long as the record contains sufficient evidence from which he could draw conclusions regarding Plaintiff's functioning and limitations.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's]

---

[4]     The record contains Dr. Bagnall's treatment notes dating back to as early as July 2014, in which he not only assessed Plaintiff's abilities to lift and carry, but also her ability to bend, twist, and change positions.  (*Id*. at 386-48).  However, because such records predate the alleged onset date by nearly two years and precede Plaintiff undergoing two surgeries after the alleged onset date, the Court will not consider them in its analysis.

residual functional capacity," a medical source statement or formal medical opinion is not necessarily required[.]" (internal citations omitted)); *see also Cook v. Comm'r of Soc. Sec.,* 818 F. App'x 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'").  However, where Plaintiff suffers from several severe impairments, and where the record does not relate Plaintiff's diagnoses to her functional abilities, the ALJ is not qualified to make an RFC determination without relying on a medical opinion about Plaintiff's abilities to perform work on a continuous and substantial basis.  *See Barnhardt v. Saul*, No. 18-CV-6632-MJP, 2020 WL 1330704, at *2 (W.D.N.Y. Mar. 23, 2020) ("[E]ven though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities, the general rule is that the Commissioner may not make the connection himself.").

While Plaintiff's treatment records provide longitudinal history of her various symptoms and complaints from before the alleged onset date until the time of the ALJ's decision, they, nonetheless, contained various inconsistencies and lacked sufficient evidence about Plaintiff's exact functional abilities from which the ALJ could have concluded that she was capable of performing sedentary work with occasional pushing, pulling, climbing of ramps and stairs, crouching, bending, and squatting, frequent fingering and handling, but without overhead work, kneeling, crawling, or climbing of ladders, ropes,

or scaffolds. (Dkt. 12 at 25). By having disregarded the findings of all treating sources because they were formulated in vague terms in response to Plaintiff's workers' compensation claim and by failing to resolve such vagueness, while relying on the limited findings that did not discuss the extent of Plaintiff's functional limitations on a long-term basis and provide factual basis for the RFC finding, the ALJ formulated the RFC based on his own reading of the bare medical evidence contained in the record.

Because "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who [submitted an opinion to or] testified before him," remand is the only appropriate remedy here. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citations omitted); *see also Rosa*, 168 F.3d. at 79 ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.") (internal citations omitted). Accordingly, the matter is remanded to the Commissioner to resolve the inconsistencies regarding Plaintiff's functional abilities of record and, if necessary, further develop the record about Plaintiff's exertional limitations. *See Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("[W]here the ALJ failed to develop the record sufficiently to make appropriate disability determinations, a remand for further findings [that] would so plainly help to assure the proper disposition of [the] claim . . . is particularly appropriate." (internal quotation marks omitted)).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted in part, and the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        July 11, 2022
              Rochester, New York